IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SHELLY KLEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 16-cv-013-JPG-CJP |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff Shelly Klein, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

**Procedural History**

Ms. Klein applied for benefits in November 2012, alleging disability beginning on January 1, 2011. Her alleged date of onset was later amended to August 19, 2011. After holding an evidentiary hearing, ALJ Carol L. Boorady denied the application on May 23, 2014. (Tr. 14-30). The Appeals Council denied review, and the decision of the ALJ became the final agency decision subject to judicial review. (Tr. 1).

Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issue Raised by Plaintiff**

Plaintiff raises the following point:

1. The ALJ erred in evaluating plaintiff's mental residual functional capacity (RFC) in that she failed to account for plaintiff's limitations in social functioning and in ability to maintain concentration, persistence or pace.

## **Applicable Legal Standards**

To qualify for DIB or SSI benefits, a claimant must be disabled within the meaning of the applicable statutes. In this context, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).[1]

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the

scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Klein was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Boorady followed the five-step analytical framework described above. She determined that Ms. Klein had worked part-time after her alleged onset of disability, but that work did not rise to the level of substantial gainful activity. She was insured for DIB only through December 31, 2016.[2]

The ALJ found that plaintiff had severe impairments of mild degenerative joint disease of the lumbar spine, degenerative joint disease of the knees with history of bilateral knee

---

[2] The date last insured is relevant only to the claim for DIB.

replacement, diabetes with peripheral neuropathy, major depressive disorder, anxiety disorder, and morbid obesity.

She further determined that these impairments do not meet or equal a listed impairment. At this step, the ALJ determined that plaintiff had moderate difficulties in both social functioning and ability to maintain concentration, persistence or pace.

The ALJ found that Ms. Klein had the residual functional capacity ("RFC") to perform work at the sedentary exertional level with some physical and mental limitations.  Only the mental limitations are at issue here.  The mental limitations were that plaintiff could understand, remember and carry out simple to moderately complex instructions consistent with semi-skilled work, and she could tolerate frequent but not constant contact with co-workers, supervisors, and the general public.

Based upon the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work.  However, she was not disabled because she was able to do other jobs that exist in significant numbers in the regional and national economies, i.e., surveillance systems monitor and optical goods final assembler.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.  The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.  Because plaintiff has not challenged the physical RFC assessment, the Court will not set forth a detailed discussion of her medical records.

1. **Agency Forms**

Plaintiff was born in 1970.  She was 41 years old on the amended date of onset.  (Tr.

259). When she applied for benefits, she was working as a presser in a dry cleaning store. She worked an average of 22 hours per week. She began working at the cleaners in August 2010. (Tr. 250). She had worked in the past overseeing patients in an adult assisted living facility. She had also worked as a medical technician in a residential care facility and a kitchen staffer/cashier in a convenience store. (Tr. 264).

### 2. Evidentiary Hearing

Ms. Klein was represented by an attorney at the evidentiary hearing on May 8, 2014. (Tr. 37).

Plaintiff testified that she left her part-time job at the dry cleaners in June 2013 because her legs were "so bad," she got sick often, and the heat in the cleaners caused problems with her blood pressure. (Tr. 45-46).

Ms. Klein began seeing a counselor, Tina McMullen, in 2012. She took the medication Pristiq, which was prescribed by her family doctor. The mental problems that would interfere with working were that she got emotional and nervous, and would cry when she felt like she was being criticized. She had crying spells. She felt really bad about two or three days a week. On those days, she did not get dressed and did not want to be around anyone. (Tr. 57-58). She had problems with concentration on bad days, which she described as "a crying day or a high pain day." (Tr. 60).

The alleged onset date was amended at the hearing to August 19, 2011, because that was the day after a prior application for disability benefits had been denied. (Tr. 63).

A vocational expert ("VE") also testified. The ALJ asked her a hypothetical question that corresponded to the ultimate RFC findings. The VE testified that this person could not do

plaintiff's past work. However, there were other jobs that she could do, such as surveillance system monitor and optical good final assembler. (Tr. 79-80).

### 3. Medical Records

Ms. Klein's primary care physician was Dr. Bradley Jones. He diagnosed Ms. Klein with depression in August 2011 and prescribed Celexa. (Tr. 383-384).

In January 2013, Dr. Jones noted that Celexa was not helping much and she had mood fluctuations. He prescribed Pristiq. (Tr. 523).

In December 2013, plaintiff asked Dr. Jones for a referral to "psychology for depression."

Dr. Jones changed her depression medication to Effexor in February 2014 because of insurance issues. (Tr. 657).

In May 2014, a family nurse practitioner noted she had a dysphoric mood. (Tr. 738).

Ms. Klein received counseling services from Tina McMullin, LPC, from September 2012 through January 2014. (Tr. 716 -727).

### 4. State Agency Consultant's RFC Assessment

In August 2011, Mark Altomari, Ph.D., assessed plaintiff's mental RFC using an agency form (Form SSA-4734-SUP) that is commonly used for this purpose in social security cases. (Tr. 360-362). This form is referred to as the Mental Residual Functional Capacity Assessment. Section I of the form consists of a list of mental activities. The consultant is asked to set forth his "summary conclusions" by checking a box to rate the severity of limitation as to each activity. The levels of severity are (1) not significantly limited, (2) moderately limited, (3) markedly limited, (4) no evidence of limitation in this category, and (5) not ratable on available evidence.

Dr. Altomari checked the box for "moderately limited" in ability to maintain attention and concentration for extended periods and in ability to respond appropriately to changes in the work setting.

In Section III of the form, the consultant is directed to explain his "summary conclusions in narrative form. Include any information which clarifies limitation or function." Here, Dr. Altomari wrote, in part, "The claimant has the ability to understand, remember and carry out complex instructions." (Tr. 362).

In February 2013, a second state agency consultant, Barbara Markway, Ph.D., assessed plaintiff's mental RFC by completing an electronic version of the Mental Residual Functional Capacity Assessment form. (Tr. 101-103).

In the first part of the form, Dr. Markway indicated that plaintiff was moderately limited in ability to understand, remember and carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with or in proximity to others without being distracted by them; and ability to interact appropriately with the general public.

In the "Additional Explanation" section of the form, Dr. Markway wrote that plaintiff could understand, remember and carry out simple instructions, maintain adequate attendance and sustain an ordinary routine, and adapt to minor changes in the workplace. (Tr. 103).

### 5. Tina McMullin's Mental RFC Assessment

Counselor Tina McMullin assessed plaintiff's mental RFC in March 2014. She indicated that plaintiff had moderate limitations in activities of daily living, maintaining social functioning, ability to maintain attention and concentration for extended periods, ability to accept instructions

and respond appropriately to criticism from supervisors, and ability to travel in unfamiliar places or use public transportation. (Tr. 712-715).

## Analysis

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that Ms. Klein had moderate difficulties in maintaining concentration, persistence or pace. (Tr. 20). She made this finding at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. She noted that, while the step three determination is not a mental RFC assessment *per se*, her ultimate RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (Tr. 20-21). However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a limitation in concentration, persistence or pace. Rather, the ALJ limited her to simple to moderately complex instructions consistent with semi-skilled work.

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in

2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position."  *Stewart*, 561 F.3d at 685.   The Court has reaffirmed that position several times in recent years.  *Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014).    Here, of course, the ALJ found that plaintiff was able to handle more than the simple, routine tasks associated with unskilled work.   She found that plaintiff was able to handle simple to moderately complex instructions, i.e. semi-skilled work.   If, as is established by Seventh Circuit precedent, a limitation to unskilled work does not adequately account for a moderate limitation in concentration, persistence or pace, it is difficult to see how a limitation to semi-skilled work would suffice.

The Commissioner defends the ALJ's decision by arguing that the state agency consultants' narrative discussions on the Mental RFC Assessment Forms support the ALJ's RFC assessment, and, by extension, the hypothetical question posed to the VE, despite the fact that the consultants indicated in the first part of the form that plaintiff had a moderate limitation in maintaining attention and concentration.   A similar argument has been rejected in other cases. *See Varga*, 794 F.3d at 816; *Yurt*, 758 F.3d at 858-859.   It is not necessary to delve into the merits of the argument here, however, because it is not applicable on the facts of this case.

ALJ Boorady did not fully credit the opinions of the state agency consultants.   Rather, she gave them "partial weight."   She gave "greater weight" to Counselor McMullin's opinion, noting that Ms. McMullin found moderate limitations in maintaining attention and concentration.   (Tr. 28).   And, in any event, state agency consultant Dr. Markway (the consultant who prepared the

most recent assessment) said in her narrative explanation that plaintiff was limited to understanding, remembering and carrying out only *simple* instructions.  (Tr. 103).  Thus, this is not a case in which the Commissioner can argue that the ALJ relied on the narrative remarks in the state agency consultants' reports for her RFC assessment.

  The Commissioner also argues that plaintiff's ability to work part-time at a semi-skilled job through June 2013 demonstrates that she maintained the capacity to perform semi-skilled work.  Again, this argument misses the mark because it ignores the crucial fact that the ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence or pace.

  The bottom line here is that the ALJ found that Ms. Klein had moderate difficulties in maintaining concentration, persistence or pace.  While she made this finding at step three, she represented that her RFC assessment would reflect the degree of limitation that she found at that step.  Binding Seventh Circuit precedent establishes that a limitation to simple, routine tasks or to unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace.  It follows that a limitation to semi-skilled work does not adequately account for moderate concentration difficulties for the same reasons.

  The ALJ's assessment of plaintiff's RFC was not supported by substantial evidence.  Therefore, this case must be remanded to the Commissioner for rehearing.  The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Klein was disabled during the relevant period, or that she should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying Shelly Klein's application for DIB and SSI benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE:   1/18/2017**

<u>s/J. Phil Gilbert</u>
**J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE**
